UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DAYTREE AT CORTLAND SQUARE, INC.,
THOMAS A. DATRE, SR. and CLARA DATRE,

                            Plaintiffs,            Docket No. 15-CV-2298
- against -                                     (JFB)(AYS)

MICHAEL P. WALSH individually,
EDWARD WALSH individually,
MICHAEL TORRES individually,
ANTHONY S. SENFT, JR., individually,
ROBERT L. CICALE, individually,
THE TOWN OF ISLIP, STEVEN J. FLOTTERON,
as Councilman of the Town of Islip,
JOHN C. COCHRANE, JR., as
Councilman of the Town of Islip,
TRISH BERGIN WEICHBRODT,
as Councilwoman of the Town of Islip.

                            Defendants.
------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' JOINT MOTION TO DISMISS

Respectfully Submitted by CAMPANELLI & ASSOCIATES P.C.
*Attorneys for Plaintiffs*
1757 Merrick Ave., Suite 204
Merrick, New York 11566
Tel: (516) 746-1600
Fax: (516) 746-2611


*On the brief*: Amanda R. Disken, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...................................................................................1

STATEMENT OF FACTS.........................................................................................1

ARGUMENT.............................................................................................................2

STANDARD OF REVIEW........................................................................................2

POINT I

    PLAINTIFFS STATED A CLAIM FOR DECLARATORY AND
    INJUNCTIVE RELIEF ("COUNT ONE").............................................................3

      A.  Count One is not a stand-alone claim for Declaratory and/or Injunctive relief.....3

      B.  Plaintiffs have a substantive claim of right to relief and are not seeking
          an advisory opinion...............................................................................5

POINT II

    PLAINTIFFS STATED A CLAIM FOR
    DEFAMATION-LIBEL ("COUNT TWO").............................................................8

      A.  Plaintiffs pled conspiracy, which subjects all defendants to this claim..................8

      B.  Defendants waived any defense of privilege.........................................................10

      C.  The defamatory statements were not absolutely privileged..................................11

      D.  The statements constituted fact, not opinion.........................................................14

POINT III

    PLAINTIFFS STATED A CLAIM FOR PROCEDURAL DUE PROCESS-
    STIGMA PLUS ("COUNT THREE").............................................................15

      A.  Defendants deliberately assassinated Plaintiffs' reputations and deprived them
          of their liberty and property interests without adequate process..........................15

i

B.   Plaintiffs deprivations were not caused by random or unauthorized
acts of government, but by the final decision makers for the Town......................18

POINT IV

PLAINTIFFS STATED A CLAIM FOR
BREACH OF CONTRACT ("COUNT FOUR").............................................................20

POINT V

PLAINTIFFS STATED A CLAIM FOR
CONSPIRACY TO VIOLATE CIVIL RIGHTS ("COUNT FIVE")..............................21

POINT VI

PLAINTIFFS ALLEGED MONELL LIABILITY.........................................................23

POINT VII

THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO
QUALIFIED IMMUNITY....................................................................................24

POINT VIII

THE OFFICIAL CAPACITY CLAIMS ARE PROPER.................................................25

CONCLUSION.................................................................................................26

## TABLE OF AUTHORITIES

### CASES

**PAGE**

#### *Federal cases*

*5 Borough Pawn, LLC. v. City of NY,*
    640 F. Supp. 2d 268, 285 (S.D.N.Y. 2009)............................................................................25

*5-Star Mgt. v. Rogers,*
    940 F. Supp. 512 (E.D.N.Y. 1996)........................................................................................7

*Berlin v. Meijias,*
    2017 U.S. Dist. LEXIS 162417 (E.D.N.Y. Sep. 30, 2017)....................................................22

*Burtnieks v. City of New York,*
    716 F.2d 982 (2d Cir. 1983)..................................................................................................19

*Ciambriello v. Cnty. of Nassau,*
    292 F.3d 307 (2d Cir. 2002)..................................................................................................21

*Celle v. Filipino Reporter Enters.,*
    209 F.3d 163 (2d Cir. 2000)....................................................................................................8

*Chiste v. Hotels.com L.P.,*
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)..........................................................................4, FN2

*Cohen v. Postal Holdings, LLC,*
    873 F3d 394 (2d Cir 2017)....................................................................................................20

*Conte v. County of Nassau,*
    2008 U.S. Dist. LEXIS 25694 (E.D.N.Y. Mar. 31, 2008) (Bianco, J.)............................15, 17

*Conte v. Newsday, Inc.,*
    703 F. Supp. 2d 126 (E.D.N.Y. 2010)....................................................................................8

*DiBlasio v. Novello,*
    344 F.3d 292 (2d Cir. 2003)..........................................................................................15, 18-19

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.,*
    438 U.S. 59 (1978)..................................................................................................................4

iii

*Ford v. Reynolds,*
   326 F. Supp. 2d 392 (E.D.N.Y. 2004)...................................................................6

*Harbor Distrib. Corp. v. GTE Operations Support Inc.,*
   176 F. Supp. 3d 204 (E.D.N.Y. 2016) (Bianco, J.)..................................................6

*In re Joint E. & S. Dist. Asbestos Litig.,*
   14 F.3d 726 (2d Cir 1993)...............................................................................4-5

*Interport Pilots Agency, Inc. v. Sammis,*
   774 F. Supp. 734 (E.D.N.Y. 1991), *aff'd on other grounds,* 14 F.3d 133 (2d Cir. 1994)..3-6

*Kaluczky v. City of White Plains,*
   57 F.3d 202 (2d Cir. 1995)...............................................................................3

*Kidder, Peabody & Co. v. Maxus Energy Corp.,*
   925 F.2d 556 (2d Cir.)....................................................................................6

*KM Enters. v. McDonald,*
   2012 U.S. Dist. LEXIS 138599 (E.D.N.Y. Sep. 25, 2012)........................................4

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.,*
   265 F.R.D 106 (S.D.N.Y. 2010)........................................................................3

*Major League Baseball Props., Inc. v. Price,*
   105 F. Supp. 2d 46 (E.D.N.Y. 2000)...................................................................6

*Malmsteen v. Berdon, LLP,*
   477 F. Supp. 2d 655 (S.D.N.Y 2007)................................................................20

*McNamee v. Clemens,*
   762 F. Supp. 2d 584 (E.D.N.Y. 2011).................................................................10

*Monell v. Dep't of Social Servs. of New York,*
   436 U.S. 658 (1978)..................................................................................23-24

*Neu v. Corcoran,*
   869 F.2d 662 (2d Cir. 1989)............................................................................16

*Officemax Inc. v. Cinotti,*
   966 F. Supp. 2d 74 (E.D.N.Y. 2013)..............................................................12-13

*Paul v. Davis,*
   424 U.S. 693 (1976)......................................................................................15

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986)..............................................................................................24

*Perlman v. Fid. Brokerage Servs. LLC,*
    932 F. Supp. 2d 397 (E.D.N.Y. 2013) (Bianco, J.)...........................................5

*Roniger v. McCall,*
    22 F. Supp. 2d 156 (S.D.N.Y. 1998)..............................................................2-3

*Sadallah v. City of Utica,*
    383 F.3d 34 (2d Cir 2004)..............................................................................17

*Seggos et. al. v. Datre et al., 2:17-cv-02684* (SJF) (ARL)..........................................7

*Springfield Hosp. v. Hofmann,*
    488 F App'x 534 (2d Cir 2012)....................................................................3-5

*St. Louis v. Praprotnik,*
    485 U.S. 112 (1988).......................................................................................24

*Stephenson v. Doe,*
    332 F.3d 68 (2d Cir. 2003)............................................................................24

*Stern v. City of NY,*
    2015 U.S. Dist. LEXIS 80149 (E.D.N.Y. June 19, 2015),
    *aff'd,* 665 Fed. Appx. 27 (2d Cir. 2016)...................................................23-24

*Sweetwater Estates, LTD. v. Carpenter et al.,* 2:16-cv-01578 (SJF) (SIL)....................7

*Town of Islip v. Datre,*
    245 F. Supp. 3d 397 (E.D.N.Y. 2017) (Bianco, J.).........................................2

    *Town of Islip v. Thomas Datre Jr., et al.,* 16-CV-2156 (JFB) (AYS)....................7

*Town of West Hartford v. Operation Rescue,*
    915 F.2d 92 (2d Cir. 1990)..............................................................................4

*The Savage is Loose Co. v United Artists Theatre Circuit,*
    413 F. Supp. 555 (S.D.N.Y. 1976).................................................................12

*Travellers Intl., A.G. v. Trans World Airlines,*
    41 F.3d 1570 (2d Cir 1994)............................................................................10

*Valmonte v. Bane,*
    18 F.3d 992 (2d Cir 1994)...................................................................................................17

*Yan Ping Xu v. City of NY,*
    700 F App'x 62, 63 (2d Cir 2017)........................................................................................19

*Ying Li v. City of NY,*
    246 F. Supp. 3d 578 (E.D.N.Y. 2017)..................................................................................21

**State Cases**

*Allan & Allan Arts v Rosenblum,*
    201 A.D.2d 136 (2d Dept. 1994)..........................................................................................11

*Andrews v. Gardiner,*
    224 N.Y. 440 (N.Y. 1918)....................................................................................................10

*Andrews v. Steinberg,*
    122 Misc. 2d 468 (Sup. Ct, N.Y. Cnty 1983)......................................................................12

*Di Tullio v. Deacy,*
    16 Misc. 2d 565 (N.Y. Sup Ct, Broome Cnty (1958)..........................................................12

*Litras v. Litras,*
    254 A.D.2d 395, 681 N.Y.S.2d 545 (2d Dept. 1998).............................................................8

*Mann v. Abel,*
    10 N.Y.3d 271 (N.Y. 2008)..................................................................................................14

*Park Knoll Assoc. v. Schmidt,*
    59 N.Y.2d 205 (N.Y. 1983)..................................................................................................11

*Prince v. Fox Tel. Stas., Inc.,*
    33 Misc. 3d 1225[A], 2011 NY Slip Op 52110[U] (Sup. Ct., N.Y. Cnty 2011),
    *aff'd in part and modified in part*, 93 A.D.3d 614 (1st Dept. 2012)......................................9

*Stukuls v. State,*
    42 N.Y.2d 272 (N.Y. 1977)..................................................................................................12

*Toker v. Pollak,*
    44 N.Y.2d 211 (N.Y. 1978)..............................................................................................11-12

*Wiener v. Weintraub*,
    22 N.Y.2d 330 (N.Y. 1968)...................................................................................11

*Williams v. Williams*,
    23 N.Y.2d 592 (N.Y. 1969)...................................................................................12

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 8..................................................................................................10, 20

Fed. R. Civ. P. 12 (b)(1).............................................................................................3

Fed. R. Civ. P. 12 (b)(6).......................................................................................2, 19

## STATUTES & CODES

28 U.S.C. § 1331.................................................................................................4-5

28 U.S.C. § 1343.................................................................................................4-5

28 U.S.C. § 1367(c).............................................................................................20

28 U.S.C. § 2201 (2018)......................................................................................3, 5

42 U.S.C. § 1983.............................................................................................4, 23

42 U.S.C. § 9607...................................................................................................5

## PRELIMINARY STATEMENT

Thirty (30) years.   That is how long it took Plaintiffs Thomas A. Datre, Sr. and Clara Datre

to build their personal and professional reputations and their business.   In a manner of months,

Defendants, utilizing their political power and/or high ranking positions within the Town of Islip,

*acting in concert*, formed a scheme to deflect blame and to destroy Plaintiffs by falsely branding

them as those who illegally dumped in a local public children's park.   This action seeks justice for

the lives the Defendants shattered.   This Memorandum of Law is respectfully submitted on behalf

of the Plaintiffs in opposition to Defendants' Joint[1] Motion to Dismiss.

## STATEMENT OF FACTS

In April of 2015, Plaintiffs filed the Verified Complaint (hereinafter the "Complaint" or

**"Compl."**) in this action seeking declaratory and injunctive relief, compensatory and punitive

damages, as well as, costs and attorneys' fees to redress deprivations, under color of law, of rights,

privileges and immunities guaranteed by the Fourth, Eighth and Fourteenth Amendments to the

United States Constitution in connection with the highly publicized allegations that "tons" of "toxic

materials" were illegally dumped in Roberto Clemente Park, situated within the Town of Islip.   A

copy of the Complaint, with exhibits (Defendants omitted Plaintiffs' Exhibits in their filing), is

annexed as **Exhibit "A"** to the declaration submitted herewith.   For the sake of judicial economy,

the Court is respectfully referred to the Complaint for a more detailed Statement of Facts.

In sum, the Plaintiffs alleged, in great detail and with numerous supporting exhibits, the

conspiracy that began with the Suffolk County Conservative Party and ended with Town decision-

making officials, acting in concert with same, publishing, approving of, and/or causing to be

---

[1] Plaintiffs respond to the Motion as though jointly made by all Defendants, but it is unclear whether Defendant Torres
has formally joined.

1

published false and defamatory statements that the Town had <u>completed</u> their investigation and <u>found</u> Plaintiff Daytree at Cortland Square Inc. ("Plaintiff Daytree") to be "a responsible party" for the dumping.   Contemporaneously, the Defendants, in an effort to further stigmatize Plaintiffs and lend credibility to their otherwise false and defamatory statements, terminated Plaintiff Daytree's tree-removal contract with the Town and also terminated Plaintiff Datre Sr.'s paid position on the Town Plumber's Examining Board.   Most critically, upon information and belief, Defendants caused the false and defamatory statements, as well as, the news of the Plaintiffs' terminations to be received by the press, which widely and devastatingly reported same, handing Plaintiffs, who were also well known in local politics, over on a silver platter for communitywide hatred and condemnation.

This scheme was devised by Defendants to protect certain paid Town employees and political operatives who had direct supervision over the Park.

## ARGUMENT

### STANDARD OF REVIEW

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 407 (E.D.N.Y. 2017) (Bianco, J.). · The Court may also consider exhibits annexed to the complaint.  *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.*, 265 FRD 106, 123 (S.D.N.Y. 2010).  "Rule 12(b)(6) imposes a substantial burden of proof upon the moving party."  *Roniger v. McCall*, 22 F. Supp. 2d 156, 160 (S.D.N.Y. 1998).   "A court may not dismiss a complaint unless the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle them to relief.' "  *Id.* (cases cited therein).  "This cautionary standard

2

applies with greater force where the plaintiff alleges civil rights violations." *Id.* (*citing Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995)).

The Complaint herein sets forth factual allegations which, if proven, clearly entitle the Plaintiffs to the relief sought.   Although Defendants also cite Fed. R. Civ. P. 12(b)(1) in their Notice of Motion, Defendants' Memorandum of Law only argues failure to state a claim.   *See* the *"Applicable Standard"* section of the Defendants' MOL.

## POINT I

### PLAINTIFFS STATED A CLAIM FOR
### DECLARATORY AND INJUNCTIVE RELIEF ("COUNT ONE")

**A.  Count One is not a stand-alone claim for Declaratory and/or Injunctive relief**

Defendants' argument that Count One must be dismissed "since [declaratory judgment and injunctive relief] are remedies and not independent causes of action" is unavailing, because Count One is not a stand-alone claim for declaratory and/or injunctive relief.

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . ." 28 U.S.C. § 2201 (2018).   "Significantly, the Act itself merely creates a *remedy* of declaratory relief, and does not create or confer federal subject matter jurisdiction over an action that would not normally come within the Court's original jurisdiction." *Interport Pilots Agency, Inc. v. Sammis*, 774 F. Supp. 734, 737 (E.D.N.Y. 1991) (emphasis in the original), *aff'd on other grounds*, 14 F.3d 133 (2d Cir. 1994).   "That is, there must be an *independent basis of federal jurisdiction* before the Court may render a declaratory judgment." *Id.* (emphasis added and citation omitted); *see also Springfield*

3

*Hosp. v. Hofmann*, 488 F App'x 534, 535 (2d Cir 2012) ("Moreover, the Hospital cannot maintain an action for a declaratory judgment *without an underlying federal cause of action*." (emphasis added and citation omitted)).

In *Interport Pilots Agency, Inc.*, *supra,* the Plaintiffs' first cause of action was also for a declaratory judgment.  *Interport Pilots Agency, Inc.*, 774 F. Supp. at 736-37.  Plaintiffs also sought relief under 42 U.S.C. § 1983.  *Id.* at 737.  The Court explained that " '[c]onsideration of the issue of jurisdiction is not equivalent . . . to an evaluation of the merits of a party's federal claim.' "  *Id.* (quoting *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 99 (2d Cir. 1990)).  "The test is whether the claim 'is so patently without merit' so as to [j]ustify dismissal based on jurisdictional grounds.' "  *Id.* (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 70-71 (1978)).  The Court then held, "Clearly, federal jurisdiction over the claims set forth in this action exists pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 42 U.S.C. § 1983."  *Id.*  The Court ultimately granted Plaintiffs' motion for partial summary judgment on this claim and issued a declaratory judgment.  *Id.* at 742.

The cases relied upon by Defendants involve *no* independent basis of federal jurisdiction. *See KM Enters. v. McDonald*, 2012 U.S. Dist. LEXIS 138599, at *54-55, No. 11-cv-5098 (ADS)(ETB), (E.D.N.Y. Sep. 25, 2012), (The counts for a declaratory judgment and injunction were the only claims left in the Amended Complaint); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726 (2d Cir 1993) (There was no "case" or "controversy" and the request for declaratory judgment was one paragraph in the "Relief Sought" section). "Stand-alone" requests for declaratory judgment and injunctive relief simply do not create a "case" or "controversy."[2]  *See*

---

[2] Defendants also cite *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) which also demonstrates that a request for a declaratory judgment and/or an injunction cannot stand alone.

4

*Springfield Hosp.*, 488 F App'x at 535 ("A prayer for relief, standing alone, simply does not satisfy

the requirement that a case or controversy exist." (citing *Asbestos Litig.*, 14 F.3d at 731)); *see also*

*Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 414 (E.D.N.Y. 2013) (Bianco, J.)

("However, because Hildegard has no underlying federal cause of action (as discussed *supra*, her

ERISA claims cannot survive summary judgment, and she has no cause of action under the IRC),

she cannot maintain an action for a declaratory judgment." (citing *Springfield Hosp. v. Hofmann*,

488 F. App'x at 535; *Asbestos Litig.*, 14 F.3d at 731)).

Count One is not a "stand-alone" request for declaratory judgment and/or injunctive relief.

Pursuant to the DJA, 28 U.S.C. § 2201, Plaintiffs seek "a declaratory judgment, adjudging and

declaring that the plaintiffs are not a 'responsible party' under 42 U.S.C. § 9607, or under any other

Federal or State law, rule or regulation, for any alleged dumping of any materials within Roberto

Clemente Park, within the Town of Islip." Compl. ¶ 152.   "Pursuant to 28 U.S.C. § 2202, the

plaintiffs further seek concomitant injunctive relief, enjoining and restraining the defendants from

continuing to further disseminate false allegations that the plaintiffs were responsible for any

alleged illegal dumping in Roberto Clemente Park." *Id.* at ¶ 153.   As found in *Interport Pilots*

*Agency, Inc.*, *supra,* federal jurisdiction exists here pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343

and 42 U.S.C. § 1983.   As discussed in detail below, Counts Two through Counts Five are not "so

patently without merit." *Interport Pilots Agency, Inc.*, 774 F. Supp. at 737.   Thus, having an

independent basis for federal jurisdiction, Count One is proper.

Accordingly, an independent basis for federal jurisdiction exists.

## B. Plaintiffs have a substantive claim of right to relief and are not seeking an advisory opinion

Defendants also argue that Plaintiffs' declaratory relief solely addresses past conduct (i.e.

that they did not dump materials in the park), which is simply incorrect.

"The decision to grant declaratory relief rests in the sound discretion of the district court . . . and the question in each case 'is whether the facts alleged, under all the circumstances show that there [] is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Interport Pilots Agency, Inc.*, 774 F. Supp. at 738 (quoting *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir.) (internal quotation marks and citations omitted)); *see also Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 211 (E.D.N.Y. 2016) (Bianco, J.); *Ford v. Reynolds*, 326 F. Supp. 2d 392, 404-405 (E.D.N.Y. 2004).   "As the Second Circuit put it: '[A] declaratory judgment action should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 55-56 (E.D.N.Y. 2000) (quoting *Kidder, Peabody*, 925 F.2d at 562 (internal quotations and citation omitted)).

As mentioned *supra*, Plaintiffs seek a declaration that they are not "responsible parties." The "substantial controversy" is that the Town falsely stated that they had <u>completed</u> their investigation and <u>found</u> Plaintiff Daytree a "responsible party."   However, the Town did <u>not</u> complete an investigation and, *vis-à-vis*, did <u>not</u> make such a finding.   The Town also actually knew that the Plaintiffs were <u>not</u> involved.   *See*, e.g., Ex. R & S to the Compl. (sworn statements); *see also* ¶¶ 158-159 ("Simply stated, none of the plaintiffs have ever dumped, or caused to be dumped, any materials, <u>whatsoever</u>, in the park. As such, they are not responsible parties, and cannot be held liable under CERCLA.").   There is "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," because as Plaintiffs further allege, "*to date, the Town*

*has not identified any other company it claims is responsible for such dumping*." *Id.* at ¶ 158. The Town has also begun or, at this point, may have completed their remediation project, thereby "destroy[ing] the evidence." *See Id.* at ¶¶ 161-62.

In addition, as a direct result of the false statements, Plaintiffs have been named as defendants in subsequent federal litigations claiming that Plaintiff(s) are responsible for the dumping scheme -- all alleging CERCLA claims. *See Town of Islip v. Thomas Datre Jr., et al.,* 16-CV-2156 (JFB) (AYS),[3] *Sweetwater Estates, LTD. v. Carpenter et al.,* 2:16-cv-01578 (SJF) (SIL), and *Seggos et. al. v. Datre et al., 2:17-cv-02684* (SJF) (ARL).[4]  Recently, in *Sweetwater Estates, LTD*, the Court granted summary judgment dismissing the Second Amended Complaint *with prejudice* because there was absolutely no evidence connecting the Plaintiffs herein and two of Datre Sr. and Clara Datre's other companies to the dumping alleged therein.   Annexed to the accompanying declaration is the complaint in each case, as well as, the decision granting summary judgment in *Sweetwater* as **Exhibits "E" – "H"**. We respectfully request that the Court take judicial notice same. *See 5-Star Mgt. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y. 1996).

Accordingly, Plaintiffs have a substantive claim of right to relief, namely, a declaration that they were not, as falsely declared by the Town, "responsible parties."  Plaintiffs are not seeking an advisory opinion of "past conduct," because Plaintiffs seek a judgment that will "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," namely an end to the ongoing professional, personal, and legal woes from being branded "responsible parties" of illegal dumping in a public children's park when they were not.

---

[3] Defendants acknowledge this case in their brief.   However, Defendants omit the fact that the Town's case was filed *after* this action. Defendants' claim that a declaratory judgment in this case could lead to inconsistent judgments is meritless.   This case would have priority.

[4] Daytree is named as a Defendant in this action. Datre Sr. and Clara Datre are not named therein.

## POINT II

## PLAINTIFFS STATED A CLAIM FOR
## DEFAMATION- LIBEL ("COUNT TWO")

### A. Plaintiffs pled conspiracy, which subjects all defendants to this claim

Defendants, in footnote 3 of their brief, argue that no defamation claim is stated as against Defendants Senft or Cicale since neither is alleged to have made the allegedly defamatory statement.   However, Plaintiffs pled conspiracy which subjects *all* defendants to this claim.

"A plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Litras v. Litras*, 254 A.D.2d 395, 396, 681 N.Y.S.2d 545, 546 (2d Dept. 1998) (citations omitted).   As to the underlying tort, "[i]n order to state a cause of action for libel under New York law, a plaintiff must plead: (1) a false and defamatory statement of fact concerning the plaintiff; (2) that was published by the defendant to a third party; (3) due to the defendant's negligence (or actual malice, depending on the status of the person libeled); and (4) special damages or *per se* actionability." *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000)).

Plaintiffs, throughout the Complaint, alleged the civil conspiracy that connects all of the defendants designed to deflect blame and to eviscerate the Datres' fundraising abilities.   *See, e.g.*, Compl., §§ I. Nature of this Action & V. Genesis of This Action; *See* Compl. ¶ 167 (repeated and reiterated).   In Count Two, Plaintiffs alleged that Defendant Michael P. Walsh, who upon information and belief, was exercising his loyalty to Edward Walsh[5] and the other Defendants

---

[5] Although Edward Walsh is no longer a party to this litigation he is not a necessary party to any single cause of action. The conspiracy still exists with or without him, particularly in that Defendant Michael Torres remains a Defendant.

herein as part of the "Suffolk County Conservative Chairman's Club," whom, upon information and belief, secured Defendant Michael P. Walsh's position as Deputy Town Attorney, *see* Compl. ¶¶ 18-19, "at the request of, under the direction of, and for the benefit of, the other named defendants herein, published false and defamatory statements regarding and concerning the plaintiffs herein, to third parties."   Compl. ¶ 168; *see also* ¶ 193 (summarizing the roles).

As to the underlying cause of action, Plaintiffs[6] stated a claim for defamation -- libel. Specifically, Plaintiffs alleged the false and defamatory statements of fact concerning them. Specifically, "[t]hose statements included, but were not necessarily limited to, multiple statements that, (a) after having allegedly completed an investigation regarding same, (b) the defendant Town had determined that the [plaintiff(s)] were "a responsible party" for the illegal dumping of toxic materials at Roberto Clemente Park," Compl. at ¶ 169, and annexed the letters signed by Defendant Michael P. Walsh containing the statements as Exhibit "D," Compl. at ¶ 170.   Plaintiffs alleged that the Town *never* commenced an investigation and had actual knowledge that it was someone *other than* Plaintiffs who were involved.   *See* Compl. ¶¶ 128-138.

Plaintiffs further alleged that the statements were published to "the named recipients listed at the top of each letter," which consisted of insurance companies and a broker, and were, upon information and belief, given to the press and the District Attorneys' Office.   Compl.   ¶¶ 170-171.   Plaintiffs further alleged that the statements were published with actual malice, Compl. at ¶

---

[6] In FN 2, Defendants argue that the individual Plaintiffs have no standing to bring this claim.   This argument fails because Plaintiffs allege that "[s]uch statements were defamatory and libelous *per se* against both plaintiff Daytree at Cortland Square and its sole principals . . . as the owners of such [a] closely-held corporation and whose personal reputations are inseparably intertwined . . ." Compl. at ¶ 173.   Plaintiffs also allege direct injuries and special damages. *See, e.g.*, Compl. at ¶ 181 – 186.   In addition, "Daytree" is a homophone for "Datre." *See generally Prince v. Fox Tel. Stas., Inc.*, 33 Misc. 3d 1225[A], 1225A, 2011 NY Slip Op 52110[U], *7 (Sup. Ct., N.Y. Cnty 2011), *aff'd in part and modified in part*, 93 A.D.3d 614 (1st Dept. 2012).   Public response, as evidenced by the Internet comments described in and annexed to the Complaint, underscores that the corporation and individual Plaintiffs received equal and distinctly separate harm as a result of the defamatory statements and Defendants' conspiracy.

197, which also defeats any defense of qualified privilege.   *See generally Andrews v. Gardiner*, 224 N.Y. 440, 446-447 (N.Y. 1918).   Plaintiffs also alleged, at length and in detail, the special damages suffered and *per se* accountability, including, but not limited to, public vilification, Compl. ¶¶ 178-182, underscored by the public Internet comments about them illustrating their exposure, by Defendants, to absolute hatred in the community, Compl. ¶¶ 190-192, destruction of their professional reputations and complete alienation regarding same.   Compl. ¶¶ 183-189.

Accordingly, Plaintiffs stated a claim for defamation – libel ("Count Two") and pled conspiracy, which subjects *all* defendants to this claim.

### B.  Defendants waived any defense of privilege

Not only is the issue of privilege more appropriate in the context of a motion for summary judgment, it is an affirmative defense.   *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011) ("A claim of privilege is an affirmative defense, which, if applicable at all, is far better suited to a motion for summary judgment than a motion to dismiss for failure to state a claim." (internal quotation marks and citations omitted)).   Fed. R. Civ. P. 8(c) commands that "a party must affirmatively state any avoidance or affirmative defense."     "The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver."   *Travellers Intl., A.G. v. Trans World Airlines*, 41 F.3d 1570, 1580 (2d Cir 1994) (citations omitted).

Defendants' answers (*filed in 2015*), copies of which are annexed as **Exhibits "B" – "D"** to the accompanying declaration, fail to allege privilege, absolute or even qualified, in response to Plaintiffs' defamation claim.   Accordingly, the Court should deem the defense waived and ignore Defendants' arguments regarding privilege in their Joint Motion.

10

### C. The defamatory statements[7] were not absolutely privileged

In any event, Defendants' argument that the "terse letter," as they describe it, signed by Defendant Michael P. Walsh and containing the false statement: "We have completed our investigation and found that Daytree at Courtland [sic] Square is a responsible party," is somehow absolutely privileged as "litigation/pre-litigation" is inconceivable and wholly without merit.

"Absolute privilege is based upon the personal position or status of the speaker and is limited to the speaker's official participation in the processes of government." *Park Knoll Assoc. v. Schmidt*, 59 N.Y.2d 205, 209 (N.Y. 1983) (citing *Toker v. Pollak*, 44 N.Y.2d 211, 219 (N.Y. 1978) (additional citations omitted). Absolute privilege also applies to statements in proceedings "before tribunals having attributes similar to those of courts." *Allan & Allan Arts v Rosenblum*, 201 A.D.2d 136, 139 (2d Dept. 1994) (internal quotation marks and citation omitted). "They are granted this protection for the benefit of the public, to promote the administration of justice, and only incidentally for the protection of the participants." *Park Knoll Assoc.*, 59 N.Y.2d at 209.

"There can, of course, be no doubt that statements made by counsel and parties in the course of 'judicial proceedings' are privileged as long as such statements 'are material and pertinent to the questions involved * * * irrespective of the motive with which they are made." *Wiener v. Weintraub*, 22 N.Y.2d 330, 331 (N.Y. 1968) (citations omitted). However, "[t]he immunity does not attach solely because the speaker is a Judge, attorney, party or a witness, but because the statements are, in the words of Lord Mansfield, 'spoken in office.' " *Park Knoll Assoc.*, 59 N.Y.2d at 210 (citation omitted)). As such, "New York has been reluctant to extend the applicability of absolute privilege to cases that would represent a departure from the policies which originally

---

[7] Plaintiffs argue there are statements, plural. Exhibit "D" to the Complaint contains five (5) letters, each of which should be construed as containing a separate defamatory statement or, at least, a republication thereof.

brought the doctrine into being." *Stukuls v. State*, 42 N.Y.2d 272, 277 (N.Y. 1977).

Specifically, "[t]o clothe with absolute immunity communications made to a body acting in other than a quasi-judicial capacity -- communications which because of the absence of a hearing may often go unheard of, let alone challenged, by their subject -- would provide an unchecked vehicle for silent but effective character assassination." *Toker*, 44 N.Y.2d at 222; *see also Di Tullio v. Deacy*, 16 Misc. 2d 565, 566 (N.Y. Sup Ct, Broome Cnty (1958) ("It is the opinion of the court, however, that the rule of absolute privilege was never meant to apply to unsolicited communications made by persons not directly involved in the litigation, officiously made and not acceptable as evidence. To hold otherwise would open the door wide for abuse detrimental to the public policy the rule is intended to serve."). "Furthermore, if a party has manipulated the legal process, or initiated litigation, in order to defame or injure another under the protective cloak of privilege, the privilege should not be applied." *Andrews v. Steinberg*, 122 Misc. 2d 468, 476 (Sup. Ct, N.Y. Cnty 1983) (citing *The Savage is Loose Co. v. United Artists Theatre Circuit*, 413 F. Supp. 555, 561 (S.D.N.Y. 1976); *Williams v. Williams*, 23 N.Y.2d 592, 599 (N.Y. 1969)).

Defendants rely heavily upon *Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74 (E.D.N.Y. 2013). However, *Officemax* involved the exact type of correspondence envisioned by the rule of absolute privilege – communications intended to resolve an issue before filing an action. *Id.* at 81 ("Indeed, if a communication between lawyers about a possible violation of a settlement agreement was to be subject to a defamation action, the effect might well be to deter any attempts by lawyers to resolve such disputes before a lawsuit is filed.").   .

Here, Defendant Michael P. Walsh, motivated purely by political pressures (and not in the discharge of his duties) as alleged throughout the Complaint, *see e.g.*, Compl. at pp. 4-5, knowingly published false statements that the Town had "completed [their] investigation" and "found that

12

Daytree at Courtland [sic] Square is a responsible party" with the pre-text, as described by Defendant Robert L. Cicale, Town Attorney, to *News12*, that doing so was "actually just a precautionary measure being taken to reserve the Town's right to take action later." Compl. ¶ 25; *see also* Exhibit "E" & "F" to the Compl. Defendant Cicale also told *Newsday*, "We cast a wide net. If it turns out they had no involvement, then they have nothing to worry about." *See* Exhibit "E" to the Compl. Defendant Cicale's statements to the press completely undermine Defendants' argument that the defamatory statements at issue herein were veiled by "litigation or pre-litigation" privilege. Moreover, despite Defendants request, the Court should not take judicial notice as "common knowledge" that this is some sort of insurance protocol.

Not only was there *no* pending litigation, but there was also *no* investigation to qualify the letters as "pre-litigation" in any respect. The letters, mailed to insurance carriers and a broker and eventually given by Defendants to the press and District Attorneys' office, certainly served *no* pre-litigation function[8] like that found in *Officemax, supra.* The statements were purely unsolicited third party communications intentionally designed to shift focus and blame away from the Defendants and onto the Datres. *See* Compl. ¶¶ 116-117. Also, Defendant Cicale, along with his proclamation that "*no final determination had been made*," told *News 12* that the insurance policies on file were "for work done by this company, that may have also been done in the park . . ." Compl. ¶ 26. However, the "work" was Plaintiffs' tree-removal contract that had absolutely nothing to do with the Park or transporting fill. Compl. ¶ 27-28. Accordingly, unlike *Officemax, supra*, these third-parties, in addition to the press and the District Attorneys' office, could not

---

[8] Defendants' reference to the Town's Case should be completely rejected, because it was filed *two years after* the letters at issue herein and also names every "Datre" or "Daytree" corporation that the Town of Islip could find on the Secretary of State's website, as well as, other Defendants. It is certainly not limited to the Plaintiff Daytree.

possibly have helped resolve any purported dispute regarding dumping in the Park.

Accordingly, the Statements were not absolutely privileged.

### D. The statements constituted fact, not opinion

Defendants' additional argument that the statements somehow consist of "[t]he expression of opinion/assertion of a legal position" is erroneous.

"Whether a particular statement constitutes an opinion or an objective fact is a question of law." *Mann v. Abel*, 10 N.Y.3d 271, 276 (N.Y. 2008). "Distinguishing between opinion and fact has 'proved a difficult task,' but [the New York Court of Appeals], in furtherance of that endeavor, has set out the following factors to be considered: '(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal … readers or listeners that what is being read or heard is likely to be opinion, not fact.' " *Id.* (citation omitted). The Court must also look to the "over-all context in which the assertions were made . . ." *Id.* (internal quotation marks and citations omitted).

As mentioned *supra*, the false statement was: "We have completed our investigation and found that Daytree at Courtland [sic] Square is a responsible party." Coupled with the fact that it was on letterhead of the Office of the Town Attorney, signed by the Deputy Town Attorney, this statement was, without question, fact, not opinion. There is *nothing* in the entire document reflective of an opinion. Defendants' argument that the insurance carriers "did not need to accept this finding" is not relevant to the question of whether this statement was fact or opinion and also seems to encourage the submission of unsubstantiated insurance claims in hopes that a carrier may simply provide coverage without question.

14

Accordingly, the statements constituted fact, not opinion.

## POINT III

### PLAINTIFFS STATED A CLAIM FOR
### PROCEDURAL DUE PROCESS-STIGMA PLUS ("COUNT THREE")

### A. Defendants deliberately assassinated Plaintiffs' reputations and deprived them of their liberty and property interests without adequate process

Despite Defendants arguments for dismissal of Count Three, this case is the ultimate illustration of *stigma plus*.

" 'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976)); *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)). "Although it is clear that defamation 'plus' loss of government employment satisfies the *Paul* 'plus factor,' we have also observed that, outside that context, 'it is not entirely clear what the 'plus' is.' " *Id.* (quoting *Neu*, 869 F.2d at 667). This Court has stated, "[t]o prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Conte v. County of Nassau*, 2008 U.S. Dist. LEXIS 25694, at *48, No. 06-CV-4746 (JFB) (ETB), (E.D.N.Y. Mar. 31, 2008) (Bianco, J.).

Here, Plaintiffs alleged that they "were not merely defamed by the defendants' deliberate publication and repeated publication of false statements which were severely injurious to their personal and professional reputations, Compl. ¶ 201, but "were contemporaneously deprived of both liberty and property interests, without due process of law, in violation of their rights to due

15

process, as guaranteed under the 14th Amendment of the United States Constitution." Compl. ¶ 202. Specifically, "plaintiffs were possessed of a clearly-established liberty interests which include, but were not limited to, *the right to pursue their chosen occupations*." Compl. ¶ 203 (emphasis added). Plaintiffs described that they were "*contemporaneously* possessed of property rights . . . in the form of a tree-removal contract . . . and paid position on the Town's Plumbing Examiners Board." Compl. ¶ 204 (emphasis added).

In detail and with references to exhibits, Plaintiffs described Defendants' malicious deprivations of their liberty and property interests by publishing, causing to be published, and approving publication of false and defamatory statements that alleged serious criminal activity on the part of the Plaintiffs, stigmatizing them further by causing wide-spread press coverage of same, and *contemporaneously* terminating the tree-removal contract and Datre Sr.'s position with the Town in a highly public manner and, again, causing press coverage of same. *See* Compl. ¶¶ 205-206. Plaintiffs then alleged that "[i]n publishing their falsehoods regarding and concerning the plaintiffs, clothing their false accusations with the authority of the Town, and buttressing them with the false claim of a never-conducted 'investigation', the defendants have severely stigmatized the plaintiffs to the extent that they are shunned by persons and companies with whom they have been conducting business for years." Compl. ¶ 207. All of which together constitute *stigma plus*. *See* Compl. ¶ 208.

Defendants' first argument that Count Three must be dismissed, because Plaintiffs' have failed to state a claim for defamation is wholly without merit as discussed at length above. We respectfully refer the Court to Point I, *supra*, in response thereto.

Defendants' additional arguments that this claim is a state law defamation claim and that Plaintiffs have failed to allege the "plus" in stigma plus are also easily disposed of. The

16

terminations of the tree-removal contract and Datre Sr.'s paid position on the Town's Plumbing Examiners Board, additional property interests, were merely the vehicles used by the Defendants to further stigmatize the Plaintiffs and impart credibility to their otherwise false and defamatory statements. The purpose of these terminations was not to simply terminate Plaintiffs, but so that readers would believe that the false and defamatory statements were true. These events were "in addition to" the alleged defamation, not "direct deleterious effects" of the defamation. *Compare with Conte, supra,* 2008 U.S. Dist. LEXIS 25694, at \*48 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 39 (2d Cir 2004) (applying this rule and these phrases); *see also Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir 1994) ("This is not just the intangible deleterious effect that flows from a bad reputation. Rather, it is a specific deprivation of her opportunity to seek employment caused by a statutory impediment established by the state.").

Without question, the terminations occurred in close proximity to the false and defamatory statements, *compare* Exhibits "D" and "K" of the Complaint, but were separate and distinct in relation to each other. Moreover, when defining the "plus" in this case, it need not be as rigid as Defendants seem to argue it is. It is not simply the termination of the tree-removal contract or Datre Sr.'s paid position with the Town, but also finds ground, as alleged, in the complete deprivation of Plaintiffs' ability to pursue their chosen occupation. As alleged throughout the Complaint, Plaintiffs' professional reputation has been completely destroyed. Professionals whom the Plaintiffs had done business with in their home-building ventures have cut-off all communication with them. *See* Compl. ¶ 188. After being branded as responsible for dumping in a public children's park, it is obvious that Plaintiffs' business reputation is beyond repair. Moreover, as discussed in subsection B, *infra*, an Article 78 proceeding would have been futile.

Defendants' discussion about the District Attorneys' investigation, which the Town, upon

17

information and belief, caused by way of their defamatory statements, and the indictment are irrelevant, especially in the context of a motion to dismiss.   Nevertheless, the Town's statements, the termination of the tree-contract, and the termination of Datre Sr. from his paid position with the Town, all occurred *before* both the District Attorneys' investigation and the indictment.   All dumping related charges involving any of the Plaintiffs were dismissed and *not* in satisfaction of Thomas Datre Jr.'s pleas.   There was never a plea agreement involving any of the Plaintiffs and not a single witness testified to seeing any of the Plaintiffs at the Park.   Also, nearly three (3) years after the tree-contract was terminated, Plaintiff Daytree took a plea with a conditional discharge for a wholly unrelated wage charge that arose during the criminal investigation.   The Town never complained that the company failed to pay prevailing wages.   Clearly, the Defendants are trying to concoct a justification that does not exist.

Accordingly, Plaintiffs have stated a claim for procedural due process-stigma plus ("Count Three").

### B.  Plaintiffs deprivations were not caused by random or unauthorized acts of government, but by the final decision makers for the Town

Defendants' final argument that Plaintiffs had an adequate post-deprivation remedy *via* Article 78 fails, because Plaintiffs deprivations were not caused by random or unauthorized acts of government, but by the final decision makers for the Town.

"Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." *DiBlasio*, 344 F3d at 302 (citation omitted).   "We have determined, however, that the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking

18

official with 'final authority over significant matters.' " *Id.* (citing *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983)); *see also Yan Ping Xu v. City of NY*, 700 F App'x 62, 63 (2d Cir 2017) ("We have reasoned that 'categorizing acts of high-level officials as 'random and unauthorized' makes little sense because the state acts through its high-level officials.' " (quoting *DiBlasio*, 344 F3d at 302-03)).

Plaintiffs have alleged sufficient facts to state a facially plausible claim that the deprivation of their liberty and property interests were made by " 'officials with final authority over significant matters' who may properly be considered 'high-level officials.' " *Yan Ping Xu*, 700 F App'x at 63 (citations omitted).   This case centers on the conduct of the Town and its highest officials whom conspired to destroy the Plaintiffs.   Specifically, Plaintiffs alleged that "[e]ach and every one of these actions were carried out by, or with the affirmative approval of, the Town of Islip's top ranking officials and final decision-makers within the Town including defendant-Councilmember-defendants Flotteron, Cochrane Jr. and Bergin-Weichbrodt and Senft, as well as the Town Attorney, defendant Cicale and Deputy Town Attorney, who have complete and final authority and decision-making power over the Town of Islip, and/or who exercised their influence and control over the final decision makers of the Town of Islip, that being the Town Board which, at the behest of defendants . . . Torres and Senft, caused the Town to contemporaneously: (a) falsely accuse the plaintiffs of the dumping, (b) terminate plaintiff's tree-contract with the Town, and (c) terminate plaintiff Thomas Datre's paid position with the Town."   Compl. ¶ 209; *see also* Compl. ¶ 215.   It should also be noted that no pre-deprivation remedies were provided, despite Plaintiffs' requests which went ignored.   See Compl. ¶¶212-213.

Accordingly, a post-deprivation remedy would be futile and would not suffice under the circumstances alleged herein.

19

## POINT IV

### PLAINTIFFS STATED A CLAIM FOR
### <u>BREACH OF CONTRACT ("COUNT FOUR")</u>

As a preliminary matter, Defendants' argue that in the absence of any viable federal claims, the Court should decline to retain supplemental jurisdiction of the state law breach of contract claim.   However, even if all federal claims were dismissed the Court could still exercise supplemental jurisdiction.   *See Cohen v. Postal Holdings*, LLC, 873 F3d 394, 399 (2d Cir 2017) ("When a district court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject-matter jurisdiction, the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state-law claims." (citation omitted)).

With respect to Plaintiffs' breach of contract claim, Defendants' erroneously argue that Plaintiffs' have failed to allege the material terms of the contract.

In *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 666 (S.D.N.Y 2007), the case cited by Defendants, the Court stated, "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' "   "Even under this liberal pleading standard, 'plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.' " *Id*. (citations omitted). "This requires allegations of, '[a]t a minimum, the terms of the contract, each element of the alleged breach and the resultant damages.' " *Id*. (citations omitted).

Count Four surpasses this minimum pleading standard.   Plaintiffs alleged that the contract came into being by a formal resolution of the Town and that it was for "tree trimming, tree removal and stump removal services to the Town for a minimum period of two (2) years."   Compl. ¶ 222.

20

It was reduced to a writing between the Town and Plaintiff Daytree "that being Town contract DPW7-2012, which was for a minimum term from the date of execution through December 31, 2014." Compl. ¶ 223. Plaintiffs alleged the Town's obligations pursuant thereto, *see* Compl. ¶ 224, and the Town's breaches, namely terminating the contract and hiring one or more third parties to provide the services and also the Town's failure to pay Plaintiff Daytree for services rendered. *See* Compl. ¶¶ 226-231.

Defendants' remaining argument that the Court should take "judicial notice of plaintiff Daytree's material breach," is a disguised request that the Court make a factual determination on a motion to dismiss. Nevertheless, as mentioned *supra*, Plaintiff Daytree's plea with a conditional discharge to a prevailing wage charge took place *nearly three years after* the Town terminated the tree contract. Accordingly, this argument is also completely without merit.

Accordingly, Plaintiffs have stated a claim for breach of contract (Count Four).

## POINT V

### PLAINTIFFS STATED A CLAIM FOR
### <u>CONSPIRACY TO VIOLATE CIVIL RIGHTS ("COUNT FIVE")</u>

Despite Defendants' arguments to the contrary, Plaintiffs have sufficiently and plausibly alleged the conspiracy that wholly deprived Plaintiffs of their liberty and property interests without due process.

As Defendants recognize, "[t]o survive a motion to dismiss on [a plaintiff's] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ying Li v. City of NY*, 246 F. Supp. 3d 578, 620 (E.D.N.Y. 2017) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).

"These two methods of demonstrating state action—'joint action' and 'conspiracy with'—are 'intertwined' and overlap in significant respects." *Berlin v. Meijias*, 2017 U.S. Dist. LEXIS 162417, at *16, No. 15-CV-5308 (JMA), (E.D.N.Y. Sep. 30, 2017) (citation omitted).

Plaintiffs' allegations are anything but conclusory or vague and are supported by numerous exhibits.  Plaintiffs alleged that, after learning of allegations of potentially toxic dumping in the park under their supervision, several Conservative Party operatives, whom Edward Walsh and Defendant Torres had personally secured paid positions for, began to panic fearing that they would be to blame, including Defendants Senft (Town Board's liaison to the Parks Department and a Conservative Party Chairman), as well as, Defendant Michael P. Walsh, Deputy Town Attorney. *See* Compl. ¶¶ 237-238.   With respect to the agreement between a state actor and a private party, Plaintiffs alleged that, upon information and belief, Edward Walsh and Defendants Torres (private party) and Senft first devised a plan to deflect blame by seeking a "scapegoat" and "would later enlist the assistance of fellow Conservative party operative defendant Michael Walsh to clothe their false accusations with the legitimacy of the Office of the Town Attorney."   Compl. ¶ 240. The Defendants would, as alleged, choose Thomas Datre Sr. as their "scapegoat."   Compl. ¶ 241.

Additionally, acting in concert, Edward Walsh and Defendants Torres and Senft conspired with Defendant Michael Walsh to fabricate and publish letters falsely accusing plaintiffs as being a "responsible party" for such dumping, and to contemporaneously cause the Town to authorize Michael Walsh to terminate the tree-removal contract and Datre Sr.'s paid position with the Town. *See* Compl. ¶ 247; *see also* ¶¶ 244-246 (Torres and Senft knew Plaintiffs were not involved); *see also* ¶¶ 248-253 (M. Walsh knew the statements were false).   Plaintiffs allege that Defendants' had two goals: (1) deflect blame and (2) destroy Plaintiffs well-established fundraising abilities. *See* Compl. ¶¶ 254-262.   In furtherance of these goals and causing actual damages, Plaintiffs

22

alleged that "the final decision making individuals, including the other named defendants herein, authorized the publication of the defamatory statements, terminated the tree contract without cause and terminated Datre Sr.'s position without cause." *See* Compl. ¶¶ 266.

Defendants hinge their argument for dismissal on the fact that this action was voluntarily discontinued, *without prejudice*, as to Edward Walsh. However, Defendant Torres, a private party, remains a Defendant in this action and served directly under Edward Walsh. *See* Compl. ¶¶ 234 & 243. The allegations against Defendant Torres are highly detailed, including confronting Plaintiffs, meeting with Thomas Datre Jr., and having scolded a Town Board Member for forcing Joseph Montuori Jr.'s resignation. *See* Compl. ¶¶ 242-246, 257. Simply because Edward Walsh is part of the story, does not make him essential to Plaintiffs' conspiracy claim. The conspiracy does not just "go away" because Edward Walsh is no longer a party to this action.

Lastly, Defendants seem to incorporate their arguments for dismissal of Plaintiffs' *stigma plus* claim in support of dismissal of Plaintiffs' conspiracy claim. For the sake of judicial economy, Plaintiffs' respectfully refer the Court to Section III, *supra*, in response.

Accordingly, Plaintiffs stated a claim for conspiracy to violate civil rights (Count Four).

## POINT VI

### PLAINTIFFS ALLEGED *MONELL* LIABILITY

Defendants erroneously argue that Plaintiffs have failed to allege *Monell* liability.

"A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of respondeat superior." *Stern v. City of NY*, 2015 U.S. Dist. LEXIS 80149, at *10, No. 12-CV-5210 (NGG) (RER), (E.D.N.Y. June 19, 2015), *aff'd*, 665 Fed. Appx. 27 (2d Cir. 2016) (citing *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 692 (1978)). "However, under *Monell*, a municipality may be held liable for the constitutional violations of its employees when such

23

violations result from the municipality's official policy." *Id.* (citing *Monell*, 436 U.S. at 693). "Such a policy may be . . . a decision by a person with 'final policy making authority,' " *Id.* (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).   Despite Defendants claim to the contrary, "[u]nder *Monell*, *Pembaur*, and their progeny, a decision by a municipal policymaker on even 'a single occasion' may expose the municipality to Section 1983 liability.  *Id.* at *11 (citing Pembaur, 475 U.S. at 471).

The Complaint contains an entire section alleging *Monell* liability.  *See* Compl. p. 40-43. "Upon information and belief, the actions undertaken by the defendants, as described herein above, were undertaken at the direction of, and with the consent of, the Town officials who were possessed of final decision-making authority at the Town of Islip."   Compl. ¶ 192.   In sum, acting under the influence of Conservative party leaders Walsh, Torres and Senft, the final decision makers, affirmatively authorized Defendant Michael Walsh to (a) publish the false statements, (b) terminate the tree-removal contract, and (c) terminate Datre Sr. from his paid position, on Town letterhead, constituting "actions undertaken by the final policy and decision-makers of the Town, and such actions constituted formal policies and decisions of the Town."   *See* Compl. ¶ 193-194.

As stated in Point III(b), an Article 78 proceeding would have been futile.

Accordingly, Plaintiffs have alleged *Monell* Liability with facial plausibility.

## POINT VII

### THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

"[A]s the Second Circuit explained in *Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003), when determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, the plaintiff's version of the facts is presumed to be true, and the question to be answered

24

is whether the defendant officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right. *5 Borough Pawn, LLC. v. City of NY*, 640 F. Supp. 2d 268, 285 (S.D.N.Y. 2009).

Here, presuming Plaintiffs' version of the facts to be true, the individual government defendants could not have possibly, let alone reasonably, believed that their actions did not violate some settled constitutional right. In fact, as alleged, Defendants Senft and Michael P. Walsh were involved in the scheme to shift blame away from the conservative party operatives who supervised the Park. Armed with actual knowledge that *no* investigation had taken place and the Town had *not* found *anyone*, let alone Plaintiff Daytree, responsible for the illegal dumping, *see* Compl. ¶ 25 & 26 (Defendant Cicale, the Town Attorney proclaiming same), these governmental officers authorized and approved of the publication of false and defamatory statements by the Deputy Town Attorney and subsequently approved terminations of the tree-removal contract and Datre Sr.'s position as vehicles to further stigmatize the Datres and lend credibility to these false statements. Feeding the press the statements and news of the terminations for wide-spread coverage and ridicule provides an additional reason why qualified immunity cannot apply.

Accordingly, the individual defendants are not entitled to qualified immunity.

## POINT VIII

## THE OFFICIAL CAPACITY CLAIMS ARE PROPER

Plaintiffs argue that Defendants Flotteron, Cochrane, Jr., and Bergin Weichbrodt are proper parties as having, upon information and belief, ultimately approved of the conduct of Defendant Michael P. Walsh, namely the publication of the defamatory statements and terminations of the tree-removal contract and Datre Sr.'s paid position. Plaintiffs are not seeking individual liability against these Defendants, but include them herein in their official capacities as their significant

25

conduct is part of the overall conspiracy and resulting injuries.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Court should deny Defendants' Joint Motion in its entirety and grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated: Merrick, New York
　　　 January 11, 2018

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　CAMPANELLI & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

　　　　　　　　　　　　　　　　By:  __/s/Amanda R. Disken, Esq.__
　　　　　　　　　　　　　　　　　　 Amanda R. Disken, Esq.
　　　　　　　　　　　　　　　　1757 Merrick Avenue, Suite 204
　　　　　　　　　　　　　　　　Merrick, New York 11566
　　　　　　　　　　　　　　　　Tel: (516) 746-1600
　　　　　　　　　　　　　　　　Fax: (516) 746-2611
　　　　　　　　　　　　　　　　Email: ard@campanellipc.com