UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
DAYTREE AT CORTLAND SQUARE,
INC., et al.,

                Plaintiffs,

   -against-

MICHAEL P. WALSH, et al.,

               Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 2:15-cv-02298-FB-AYS

*Appearances*:
*For the Plaintiffs*:
ANDREW J. CAMPANELLI
Campanelli & Associates, P.C.
1757 Merrick Avenue, Suite 204
Merrick, NY 11566

*For the Defendants*:
TIMOTHY F. HILL
267 Carleton Avenue, Suite 301
Central Islip, NY 11722

JOHN R. DICIOCCIO
Islip Town Attorney's Office
655 Main Street
Islip, NY 11751

**BLOCK, Senior District Judge:**

      Plaintiffs Thomas A. Datre Sr. ("Datre Sr."), Clara Datre, and Daytree at Cortland Square, Inc. bring this action against defendants Michael P. Walsh, Michael Torres, Robert L. Cicale, Anthony S. Senft Jr., Steven J. Flotteron, John C. Cochrane, Trish Bergin Weichbrodt, and the Town of Islip (the "Town"). Before the Court are claims for defamation (libel), stigma-plus, breach of contract, and section 1983 conspiracy.

1

Fundamentally, the plaintiffs contend the defendants engaged in a conspiracy to cause the local community and members of law enforcement to wrongfully believe that the plaintiffs were responsible for dumping toxic waste in the Roberto Clemente Park (the "Park"). Notwithstanding these allegations, Thomas Datre Jr., an employee of plaintiff Daytree at Cortland Square, Inc., has pleaded guilty to four felonies in connection with the dumping of hazardous materials in the Park.

For the following reasons, the Court grants the motion to dismiss.

# I.

Daytree at Cortland Square is a New York State corporation formed in 2010 for the purpose of building a housing project in Bay Shore, NY known as Cortland Square. Datre Sr. and Clara Datre were principals of the firm, and Daytree at Court Square was run as a "family business." *See* ECF No. 89-8 at 16, 73 (deposition of Clara Datre). The organization employed Datre Sr. and Clara Datre's daughter, Gia Gatien, and son, Thomas Datre Jr. ("Datre Jr."). *See*, *e.g.*, ECF No. 89-10 at 71 (listing Datre Jr. as the "general manager" and "contact person" for "Daytree at Cortland Square Inc."). The family ran Daytree at Cortland Square and other associated businesses out of a shared office located at 2150 Fifth Avenue in Ronkonkoma, NY pursuant to a single lease. Datre Jr. was on the payroll of Daytree at Cortland Square as an employee. *See* ECF No. 89-12. Daytree at

2

Cortland Square shared equipment and employees with Datre Jr.'s businesses and financed vehicles for use by Datre Jr. Clara Datre also issued interest free payments to Datre Jr.'s businesses and sought repayment through a barter system. *See* ECF No. 89-8 at 27, 97-99, 110. Corporate filings reveal overlap between the various businesses of Datre Sr., Clara Datre, and Datre Jr. *See*, *e.g.*, ECF No. 89-8 at 81 (Clara Datre identifying herself as a process server for Datre Jr.'s company DFF Farm Corp).

In the summer of 2013, after a vast quantity of toxic waste was dumped in the Park, an effort was undertaken by the Town to determine who was responsible. According to a letter submitted by Deputy Town Attorney Michael P. Walsh to the Town's insurance carriers, the Town found that "Daytree at Cortland Square [was the] responsible party." *See* ECF No. 90-20 at 2-6. A wholly separate criminal investigation by the Suffolk County District Attorney's Office led to the indictment of both Datre Sr. and Datre Jr. As acknowledged by the plaintiffs, Datre Jr. ultimately pleaded guilty to four felonies in connection with the dumping of toxic waste at the Park. He received concurrent one-year sentences on each count.

In the wake of the toxic dumping allegations, Datre Sr. was removed from a paid position on the Town's Plumbers' Examining Board, and a tree removal contract between the Town and Daytree at Cortland Square was cancelled.

Notwithstanding these facts,[1] the plaintiffs allege a wide-ranging, politically motivated[2] conspiracy by defendants who they claim "acted in concert to destroy Plaintiffs' lives by falsely branding them as heinous criminals who illegally dumped tons of toxic materials in a children's public park." ECF No. 90 at 8. They argue the defendants failed to properly supervise the Park and "orchestrated a conspiracy to deflect blame for their own wrongdoings." *Id*. These claims, and plaintiffs' theory, hinge on the notion that plaintiffs – Datre Sr., Clara Datre, and Daytree at Cortland Square, Inc – are "entirely different entit[ies]" from Datre Jr. ECF No. 90 at 18.

## II.

"A district court may grant summary judgment only where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Reynolds v. Quiros*, 990 F.3d 286, 293–94 (2d Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is

---

[1] The plaintiffs contend that "all the spurious assertions in Defendants' joint motion for summary judgment are nothing more than lies, fabricated for the sole purpose of deflecting blame for Defendants' own wrongdoing and placing it squarely upon the Plaintiffs, thus making them the town's scapegoats." ECF No. 90 at 12.

[2] The plaintiffs repeatedly claim that defendants' conspiracy was motivated by a desire to "deflect blame away from their Conservative Party operatives within the town" and to "eviscerate" the "substantial political fundraising abilities" of the Datres. ECF No. 90 at 20.

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 248 (2d Cir. 2021) (internal citation omitted). At this stage, courts must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). "In evaluating a motion for summary judgment, a district court may not make credibility determinations, or weigh evidence." *Reynolds*, 990 F.3d at 294.

### III. Defamation (Libel) Claim

"Under New York law, a plaintiff must establish five elements to recover in libel: 1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face)." *Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 259 (2d Cir. 2021) (quoting *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)).

The allegedly defamatory statement was sent on official stationery of the "Office of the Town Attorney" of Islip, New York and signed by "Deputy Town

Attorney" Michael P. Walsh. *See* ECF No. 90-20 at 2-6.[3] The letter was sent to the Town's insurance carriers. *Id*. It informs them that "dumping of construction material on town property located at 400 Broadway, Brentwood, New York 11717" occurred. *Id*. The letter states that "we have completed our investigation and found that Daytree at Cortland Square is a responsible party." *Id*.

The defendants contend this statement is covered by governmental/executive privilege.

Under New York law, immunity from liability for defamation is afforded to "an official [who] is … entrusted by law with administrative or executive policy-making responsibilities of considerable dimension' … with respect to statements made during the discharge of those responsibilities about matters which come within the ambit of those duties." *Clark v. McGee*, 49 N.Y.2d 613, 617 (1980) (internal citations omitted); *see also Ove Gustavsson Contracting Co. v. Floete*, 299 F.2d 655, 658 (2d Cir. 1962) (analogous privilege applied to federal officials for "acts, done within the scope of their duties, which necessarily involved the exercise of a judgment or discretion which public policy requires be made without

---

[3] The plaintiffs contend the defendants' statements "included, but were not necessarily limited to, multiple statements to four insurance companies, one broker, the DA's Office, and the press." ECF No. 90 at 28. However, in their briefing, the plaintiffs do not identify the precise statements to which they are referring other than the letter from Deputy Town Attorney Walsh identified as plaintiffs' "Exhibit S" and docketed at ECF No. 90-20.

fear of personal liability"). Absolute privilege is afforded based on the position held by the speaker and is limited to the speaker's "official participation in the process of government." *Park Knoll Associates v. Schmidt*, 59 N.Y.2d 205, 209 (1983).

The privilege is designed "to secure the unembarrassed and efficient administration of justice and public affairs" so that "public officials will be free to speak their minds openly and bluntly as is required for the proper performance of their duties, without subjecting themselves to the possibility of vexatious and burdensome lawsuits." *Clark*, 49 N.Y.2d at 617 (internal citations omitted). A government official does not need to be a high-level executive to properly invoke the privilege,[4] and the privilege "must be carefully confined to that type of situation in which the protection provided by the privilege will serve a necessary societal function." *Id*. at 618.

Here, the statement in question was made in the discharge of Michael

---

[4] *See Augustyniak v. Koch*, 588 F. Supp. 793, 797 (S.D.N.Y.), *aff'd*, 794 F.2d 676 (2d Cir. 1984) (application of privilege to city lawyers "acting within the scope of their duties as executive officials enforcing the municipalities' [housing code and] laws"); *Walls v. Town of Islip*, No. 0011376/2004, 2008 WL 3333887 (N.Y. Sup. Ct. July 07, 2008) (privilege attaching to "Deputy Commissioner of the Department of Code Enforcement"); *Clark*, 49 N.Y.2d at 619 (application to town supervisor); *Ward Telecommunications & Computer Servs., Inc. v. State*, 42 N.Y.2d 289, 290 (1977) (applying the privilege to "audit reports issued on behalf of the State Comptroller by the Division of Audit and Accounts"); *Gautsche v. State*, 67 A.D.2d 167, 170 (N.Y. App. Div. 3d Dep't 1979) (granting "absolute[] privilege" to Assistant Attorney General who was investigating fraud and abuse).

Walsh's official responsibilities as Deputy Town Attorney and came within the ambit of his duties. It was part of a letter to the Town's insurers – informing them of a potential liability issue – and sent on stationery bearing the town seal. Sound public policy and established law require that this Court find Walsh's statement is covered by governmental/executive privilege and cannot form the basis for a defamation claim.[5]

## IV. Stigma-Plus Claim

To prevail on a "stigma-plus" claim, a plaintiff must establish "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019).

The analysis above defeats any claim that Deputy Town Attorney Walsh's statements support a stigma-plus claim. Privileged statements cannot form the

---

[5] The Court also finds that Deputy Town Attorney Walsh's straightforward statement in letters to the Town's insurers was not motivated by "actual malice," or "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 353 (2009). As such, even if an absolute privilege did not apply, Deputy Town Attorney Walsh's statement would also be subject to qualified governmental privilege, which requires a showing of actual malice. *See, e.g.*, *Brennan v. Granite Equip. Leasing Corp.*, 60 A.D.2d 877, 878 (N.Y. App. Div. 2d Dep't 1978) ("It is well settled that summary judgment is properly granted where a qualified privilege obtains and the plaintiffs offer an insufficient showing of actual malice") (quoting *Trails W., Inc. v. Wolff*, 32 N.Y.2d 207, 221 (1973)).

basis for a stigma-plus claim as a matter of law. *See Paterno v. City of New York*, No. 17 CIV. 8278 (LGS), 2018 WL 3632526, at *4 (S.D.N.Y. July 31, 2018), *aff'd*, 781 F. App'x 15 (2d Cir. 2019) ("Here, the Consent Decree and the statements in it are absolutely privileged and cannot be the basis for a [stigma-plus] claim"); *Sharpe v. City of New York*, No. 11 CIV. 5494 BMC, 2013 WL 2356063, at *7 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. App'x 78 (2d Cir. 2014) (rejecting stigma-plus claim because statements were "made in the course of court proceedings" and were therefore "absolutely privileged under New York common law"). Because the statements in question are subject to governmental/executive privilege, they cannot serve as the basis for a stigma-plus claim.

Moreover, stigma-plus is a constitutional tort grounded in the Due Process Clause. The Second Circuit has found the availability of an Article 78 hearing is a "perfectly adequate post[-]deprivation remedy" sufficient to satisfy Due Process concerns. *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996); *see also Abdelhadi v. City of New York*, No. 08-CV-380, 2011 WL 3422832, at *6 (E.D.N.Y. Aug. 4, 2011), *aff'd sub nom. Abdelhadi v. New York City Dep't of Correction*, 472 F. App'x 44 (2d Cir. 2012) (applying *Hellenic* to a stigma-plus claim and concluding "an Article 78 proceeding under New York law provides an adequate post-deprivation opportunity for the plaintiff to clear his or her name"). The plaintiffs could have availed themselves of the

9

process they were due by pursuing an Article 78 proceeding in state court, but they chose not to. Having failed to do so, plaintiffs cannot now state a stigma-plus claim in federal court. *See Paterno*, 2018 WL 3632526, at *6 (finding, in stigma-plus context, "[p]laintiff's decision not to avail himself of the process he was due—i.e., an Article 78 proceeding—does not constitute a denial of due process").

## V. Section 1983 Conspiracy Claim

A § 1983 conspiracy claim requires a plaintiff to establish "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

With the benefit of discovery, it is evident that plaintiffs' claim fails to establish the first and second elements, which require an agreement between a state actor and a private party to inflict an unconstitutional injury. Plaintiffs voluntarily withdrew all their claims against Edward Walsh, leaving Michael Torres as the only defendant who is not affiliated with the Town. Notwithstanding the bald assertions of plaintiffs' counsel,[6] there is no clear evidence in the record

---

[6] Plaintiffs' counsel contends that "among all Defendants' meritless claims, this one is probably the most preposterous" and repeats the theory that defendants met to choose "Thomas Datre Sr. as their 'scapegoat' despite having not a single shred of evidence, as of April 24, 2014, that Plaintiffs committed any violations at the Roberto Clemente Park." ECF No. 90 at 52.

10

establishing that any of the Town defendants formed an agreement with Michael Torres to inflict an unconstitutional injury. *See generally* ECF No. 89-24 (deposition of Michael Torres).[7] Although there is evidence Michael Torres reached out to Datre Jr. and Sr. in connection with the town's investigation, this simply does not rise to the level of infliction of an unconstitutional injury. *See Fisk v. Letterman*, 401 F.Supp.2d 362, 377 (S.D.N.Y. 2005) ("[a]lleging merely that a private party regularly interacts with a state actor," as plaintiff did in this case, "does not create an inference of agreement to violate a plaintiff's rights.") (internal citations omitted); *see also Rzayeva v. United States*, 492 F.Supp.2d 60, 82 (D.Conn. 2007) ("Although Plaintiffs generally assert that a network of conspirators exists among [the named defendants] and others to deprive Plaintiffs of their civil rights ... they allege no facts to establish that the private defendants entered an agreement with the state actors to inflict a particular unconstitutional injury upon them."). Plaintiffs have failed to point the Court to other evidence – aside from their factually unsubstantiated theory, which is directly contradicted by the guilty plea of Datre Jr. – that the defendants inflicted an unconstitutional injury. *See Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (where "[plaintiffs] produced no evidence that the defendants entered into an agreement to deprive

---

[7] Torres was asked specifically whether he "participated in a conspiracy to frame the plaintiffs" and answered with an unequivocal "no." *See* ECF No. 89-24 at 78.

11

[them] of [their] constitutional rights," summary judgment was appropriate).

## VI. Breach of Contract Claim

In order to state a breach of contract claim, a plaintiff must allege "at a minimum, the terms of the contract, each element of the alleged breach and the resultant damages." *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 337 (E.D.N.Y. 2003) (citation omitted). "The key elements of a breach of contract claim are: (1) the formation of an agreement via offer, acceptance and consideration; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages." *Id*.

Both parties acknowledge that Daytree pleaded guilty to violating prevailing wage laws in connection with performance of the tree removal contract.[8] *See* ECF No. 90 at 48-50 (acknowledging the breach and arguing it was "de minimis"). Adherence to the prevailing wage law is a material term of the contract. *See* ECF No. 89-10 at 94-95 ("the wages to be paid for a legal day's work … shall not be less than the prevailing rate for a day's work in the same trade or occupation"); *see also United States v. Coren*, No. 07-CR-265 (ENV), 2009 WL 2579260, at *2 (E.D.N.Y. Aug. 20, 2009), *aff'd*, 432 F. App'x 38 (2d Cir. 2011) ("Having work on

---

[8] The defendants further argue that Daytree breached the contract through "performance and billing deficiencies," "fail[ure] to comply with response-time requirements set forth in the Tree Removal Contract," and lack of insurance coverage. ECF No. 89-1 at 59-60.

government owned projects actually done by prevailing wage workers is a fundamental part of the contract").

The breach of contract claim cannot stand in light of Daytree's prior, material breach – namely, violation of the prevailing wage law. *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006) ("breach may excuse the nonbreaching party from further performance if the breach is material."); *see also Shaub & Williams, L.L.P. v. Augme Techs., Inc.*, No. 13 CIV. 1101 GBD, 2014 WL 625390, at *1 (S.D.N.Y. Feb. 14, 2014) (acknowledging the "affirmative defense[]" of "breach of contract"). Even if the prior breach was not fully appreciated by the Town at the time of termination of the contract, "a party may terminate a contract for cause, and gamble that its estimate of the situation will be justified when all the facts are proven." *Kerns, Inc. v. Wella Corp.*, 114 F.3d 566, 570 (6th Cir. 1997) (analyzing New York law); *see also Weber v. Tada*, 589 F. App'x 563, 567 (2d Cir. 2014) (admitting "after-acquired evidence" as a defense to a "breach of contract claim, specifically to show that [the other party] materially breached the contract first").

The plaintiffs' breach of contract claim must be dismissed based on their admitted, prior material breaches.

## CONCLUSION

The Court is firmly persuaded that even after resolving all ambiguities and

13

drawing all reasonable inferences against the moving party, a reasonable jury could not return a verdict for the plaintiffs on any of the claims presented. For the foregoing reasons, the defendants' motion for summary judgment is **GRANTED**.

    **SO ORDERED.**

                                                                                           /S/ Frederic Block
                                                                                         FREDERIC BLOCK
                                                                                         Senior United States District Judge

Brooklyn, New York
July 28, 2021